# DECLARATION OF KENNETH BAIN II

I, Kenneth Bain II, being duly sworn, do hereby depose and state as follows:

## PURPOSE OF THIS DECLARATION

1. This declaration is submitted in support of a complaint for forfeiture. The information contained in this declaration is based on an investigation conducted by the Yamhill County Sheriff's Office, with the assistance of DEA, into illegal marijuana grows. This declaration will show that in total $174,340.12 in U.S. Currency (**Defendant Currency**) was seized from Philip Peters JANZEN ("JANZEN") at his residence in Dayton, Oregon and from eleven workers assisting with the illegal marijuana grow. The **Defendant Currency** is subject to forfeiture pursuant to 21 U.S.C § 881(a)(6), as proceeds furnished or intended to be furnished by any person in exchange for a controlled substance or proceeds traceable to such an exchange in violation of 21 U.S.C. § 841. Information contained in this declaration is based upon my personal observations, training, and experience, and that of other law enforcement officers. This declaration does not contain each and every fact that I know about this investigation, only those necessary to establish probable cause to believe the seized currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## DECLARANT'S BACKGROUND AND TRAINING

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since January 2022. I am currently assigned to the DEA Seattle Field Division (SFD) Portland District Office (PDO). As a Special Agent of the DEA, I have participated in numerous drug investigations as either the lead case agent or as a supporting investigative agent, including in Title III wiretap investigations of violations of the Controlled Substances Act, Title 21, United

States Code, Section 801, *et seq*.

3. I have received specialized training from the DEA, to include a 17-week Basic Agent Training course and other training courses. I have been involved in conducting long-term, international, and complex conspiracy investigations. Prior to my assignment to the PDO, I was a sworn law enforcement officer in the state of Florida with the University of Florida Police Department for six years. During that time frame, I was assigned to Patrol for the first four years. For the last two years, I was assigned to the Gainesville DEA office, under the Miami Field Division, as a deputized Task Force Officer. I am familiar with investigations of Drug Trafficking Organizations ("DTOs") including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed. I am also familiar with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs.

## BACKGROUND OF THE INVESTIGATION

4. In July of 2022, the Yamhill County Sheriff's Office ("YCSO") began investigating an illegal marijuana grow located at SE Webfoot Road, Dayton, Yamhill County, Oregon, (hereinafter referred to as "Webfoot Property") based on information from a tip.

5. Based on open-source databases, investigators were able to locate satellite images of the Webfoot Property, which showed approximately 130 greenhouses on the property. In August 2022, investigators received permission from the neighboring property owners to come onto their property in order to conduct surveillance on the Webfoot property. During that time, investigators observed several greenhouses with clear plastic covering the top portion. The sides of the greenhouses however were open and free of plastic making it easier to see into and

investigators saw several hundreds of green plants inside the greenhouses, which appeared to be cannabis based on their training and experience.

6.      Investigators checked the Webfoot Property for active licenses through Oregon Department of Agriculture-Hemp Program ("ODA"), Oregon Health Authority-Oregon Medical Marijuana Program ("OMMP") and Oregon Liquor & Cannabis Commission ("OLCC").  After checking all three regulating authorities, investigators found there were no active licenses to grow more than the legal limit of marijuana or hemp.  Per ODA, the Webfoot Property through "Janzen Farms LLC" was licensed to grow hemp in 2019.  ODA records showed that JANZEN was listed in the 2019 hemp application as the member, owner, and the registered contact person.  ODA however was unable to locate any licensing for the property since 2019.

7.      Per Yamhill County Assessors records, JANZEN through Janzen Farms LLC was in control of the Webfoot property.  Based on the training, knowledge, and experience of the investigators, once an individual applies for a license through one of the three regulatory agencies (OLCC, OMMP & ODA) they obtain a good understanding of what is legal and what is illegal and know that both the property and the owner/grower must be licensed.

8.      Based on the training, knowledge, and experience of investigators, I know that many property owners in Yamhill County will lease their land to agricultural farmers growing various products (grass seed, grain, hay, corn, etc.).  I know individuals who lease out their property frequently have lease agreement documents at their residences or places of business for official record keeping purposes.  Many of these lease agreements will say what they agree to use the land for (what they will be growing), how long they will be using the land for, what they have access to on the property, how much they will be paying to lease the property, how it will be paid (cash, check, card, etc.).

**Declaration of Kenneth Bain**                                                                                          **Page 3**

Oregon National Guard flyover

      9.      In August 2022, investigators accompanied the Oregon National Guard Counter Drug program on a helicopter flight in Yamhill County.  While in the air, investigators were able to make several observations of both the Webfoot Property and an additional piece of property also associated with JANZEN at SE Willow Lane, in Dayton, Oregon, hereinafter referred to as "Willow Lane Property".  While in the helicopter, investigators were able to observe approximately 50 greenhouses on the north end of Webfoot Property.  There were an additional six greenhouses directly east of the residence across Palmer Creek.  While the camera was zoomed in, investigators observed the greenhouses to have green leafy plants which appeared to be in single file rows and planted in the ground. Investigators also observed several five-gallon containers (approximately 17) which they know based on their training, knowledge, and experience to be liquid fertilizer/nutrients to aide in the growth of Marijuana plants.  In addition to the liquid fertilizer/nutrients in the five-gallon containers, there were two blue 55-gallon drums, and hosing running from the liquid fertilizer/nutrients to the greenhouses.  Near Keene Reservoir, investigators also observed a pool with a hose and pump attached.  The pump was near the reservoir and had a hose attached running to the pool as well as towards the greenhouses.

      10.      Investigators then had the camera operator zoom into the six greenhouses to the east of the residence and Palmer Creek.  While zoomed in, investigators could see leafy green plants in white pots.  The plants were grouped in rows of ten and there appeared to be approximately 15-20 plants in each row. There was a Porta Potty near Palmer Creek and additional black fabric up in what appeared to be an attempt to conceal or block the view from the Webfoot Property.  Investigators observed PVC piping running the width of the greenhouses for watering purposes.  Investigators later utilized Google Earth's measurement tool and measured

the six greenhouses behind JANZEN's house were approximately 450 feet away from his residence.

11. Investigators then flew a short distance to the general vicinity of the Willow Lane Property, in Dayton, Oregon, within the rural county area. While flying at approximately 2500 feet, investigators detected a strong odor of Marijuana in the cabin of the helicopter. Investigators began looking around and were able to identify approximately 50 large greenhouses on the property, where county assessor records show JANZEN operates Janzen Farms. The greenhouses were southwest of Willow Lane and north of Ingram Lane. The greenhouses had clear plastic tarp covering the tops and exposed siding and ends.

12. While the camera was zoomed in on the greenhouses, investigators were able to observe very similar looking leafy green plants in rows inside the greenhouses. Investigators were also able to observe irrigation pipes/tubes set up running the width and length of the greenhouses. Investigators saw and counted five large pools with dark colored liquid in them. The pools appeared to be approximately four feet tall and 15-20' in diameter. Per open-source searches, a pool with those dimensions can hold 6,000-8,000 gallons of water. Next to each of the pools were agricultural water tanks in various sizes. Per the training, knowledge, and experience of investigators, the agricultural water tanks near the pools were approximately four feet tall and three feet wide. Water totes that size can hold up to 330 gallons of liquid. While zoomed in to the pool areas investigators was able to observe the water inside the totes to be green in color and several of them had liquid fertilizer/nutrient containers next to them. Investigators observed PVC piping going from the agricultural water tanks to the greenhouses as well as from the pool to the greenhouses.

Search Warrants

**Declaration of Kenneth Bain**                                                                      **Page 5**

13. On August 16, 2022, Yamhill County Circuit Court Judge Cynthia Easterday signed state search warrants authorizing the search of Webfoot Property and the Willow Lane Property. The search of the Willow Lane Property included the outdoor campsite that appeared to be set up for the workers.

14. On August 22, 2022, investigators executed a state search warrant at the Webfoot Property. During the execution of the warrant, investigators interviewed Juan, a worker on that property. Juan did not speak fluent English and was provided an interpreter for the conversation. Juan was read his Miranda warnings and asked if he understood his rights to which he stated yes. Investigators asked Juan what he was doing driving onto the property. Juan said he was going to work for JANZEN. Investigators asked Juan what type of work he did for JANZEN. Juan said he maintained the hazel nut orchards performing landscaping tasks (cutting grass, spraying, etc). Investigators asked Juan how long he had worked for JANZEN, and he said seven to eight years. Investigators asked Juan if there were other things that they grew at the farm other than hazel nuts, corn, etc. Juan said he knew they grew hemp and those were kept in the greenhouses out back. Juan said JANZEN had told him the plants are being grown for "CBD oil". Investigators asked Juan how JANZEN pays him for his work on the farm. Juan said every 15 days JANZEN pays him by check.

15. At 0830 hours, investigators contacted JANZEN and read him his Miranda warnings and asked if he understood his rights to which he stated yes. Investigators told JANZEN they had a signed search warrant for his residence and property for evidence of Unlawful Manufacture of a Marijuana Item and Unlawful Possession of a Marijuana Item. JANZEN said he didn't understand what he has to do with that. JANZEN proceeded to tell investigators he just leases his land to different people for farm purposes. JANZEN said he leases land to Tom

Sweeney and Victor Ochenakov and that's his only involvement.

16. Investigators asked JANZEN the identity of the person who leased the land for the greenhouse and growing cannabis. JANZEN said Victor was the person who leased that land from him. JANZEN stated that Victor paid him approximately $1,000 an acre to put up greenhouses, and he leased approximately six to seven acres. Investigators asked JANZEN how "Victor" paid him, and JANZEN replied that he was paid in cash. JANZEN said Victor was growing hemp for CBD purposes.

17. Investigators asked JANZEN about Tom's lease. JANZEN said Tom leased the land to grow corn, grass, hay, wheat, etc. JANZEN was asked how much Tom paid him per acre and how he paid. JANZEN replied that he gets paid approximately $300 per acre for approximately 250 acres and that Tom paid him by check.

18. Investigators then asked if JANZEN had ever been licensed to grow any type of cannabis product at the Webfoot Property. JANZEN said he was licensed to grow "CBD" as well and obtained a license to grow hemp in 2019. JANZEN was asked if the license for the address was still active, he said no and that he did not grow Hemp any longer. JANZEN said a lot of people grew Hemp in 2019. Investigators then asked JANZEN if when he applied for the license in 2019 if they told him what he needed to do in order to grow hemp on his property. JANZEN said, "we had to get the permit".

19. Investigators further explained to JANZEN that he should have knowledge then that the property is required to be licensed prior to growing any cannabis products. JANZEN then said he did not know that. ODA records for Janzen Farms 2019 application however showed that JANZEN was not only listed in the application as the member, owner, and the registered contact person, but JANZEN was also the signatory who agreed to meet all laws and regulations pertaining

to industrial hemp growers and handlers.

20.   Investigators asked JANZEN where in the house he kept the lease agreement. JANZEN said probably in his briefcase. JANZEN stated he had one for Tom and one for Victor. Investigators asked a second time how much Tom paid JANZEN for the land he was using, and he said $300 an acre. Investigators asked JANZEN how many acres Tom leased from him, and he said 250. Investigators later located a lease agreement for Tom that had been filed in JANZEN's office at the Webfoot Property address, which confirmed Tom had paid JANZEN $300 per acre for approximately 260 acres. Attached to the lease agreement was a check from Tom to JANZEN Farms for approximately $78,000.

21.   Investigators asked JANZEN how much Victor was paying JANZEN and he said $1,000 per acre. Investigators asked JANZEN how many acres Victor leased, and he said five to six. Investigators then asked JANZEN if Victor was paying $5,000-$6,000 per month to lease his land. JANZEN clarified and said Victor was paying $5,000-$6,000 to lease the ground and not monthly. Investigators then clarified with JANZEN that Tom paid with a check and Victor paid by cash, and he said yes.

22.   During the warrant execution at the Webfoot Property however, investigators were unable to find the lease with Victor that JANZEN claimed existed for $1,000 per acre. Investigators did determine that the lease with Victor for cash was not filed with the other leases in JANZEN'S office that were paid with a check.

23.   Investigators asked JANZEN if anyone else at the residence had knowledge there was cannabis being grown on the property. JANZEN did not understand the question. Investigators told him we were approximately 800' away from the nearest greenhouse and investigators could smell the odor of Marijuana. JANZEN then said no one else had any knowledge

they were growing cannabis on the property.

24. Investigators then asked JANZEN if he found it strange that in 2019, he stopped growing because the "CBD" market crashed but they're still wanting to grow "CBD" here. JANZEN said "Yeah" but then quickly changed his answer to "I don't know, I just rented it out". Investigators then asked JANZEN if he thought it was odd that Tom would pay him $300 an acre and Victor is willing to pay him $1,000 an acre. JANZEN then said Victor wanted to put up greenhouses so it wasn't like he would be growing wheat. Investigators then asked JANZEN if $1,000 was the going rate to lease an acre of land in the area. JANZEN didn't answer the question but said they have a lot of people offering to lease land from them. JANZEN further stated Tom just took all the land with his lease agreement.

25. Investigators then asked JANZEN again if $1,000 an acre was average for someone trying to rent or lease farmland in the area. JANZEN said it probably is for someone wanting to use it for greenhouses. Investigators asked JANZEN when he gets paid how does he deposit his money. JANZEN said they have a farm account it gets deposited into. Investigators asked JANZEN if the money had been deposited into the farm account and he said he did not think so. Investigators asked JANZEN if the money was inside his residence. JANZEN said, "I have money inside the house".

26. Investigators then asked JANZEN how many years Victor leased his land from him. JANZEN said just this year. Investigators asked JANZEN if we would find other contracts from past years linking Victor to his property, and he said no. JANZEN was then informed that per Google Earth, satellite images showed there were approximately 100 greenhouses up the previous year. Investigators then asked if he was farming the land, in which he said "yeah, we've been farming it." When asked why the satellite photos showed so many greenhouses in the previous

year, JANZEN said he didn't know, it was people using it he guessed.

27. Later, inside a satchel bag within the lessee's camp at the Willow Lane Property, investigators located two 2022 lease agreements between "Janzen Farms LLC S.E. Webfoot Rd Dayton, OR 97022" and "A1 Conifers P.O. Box 341, Gervais, OR 97026". The leases documented the acreage use and how much Janzen Farms was to receive from A1 Conifers from April 1, 2022, to November 30, 2022. Investigators had determined from prior investigation that A1 Conifers was owned and operated by Victor Ovchinnikov, the same individual that JANZEN claimed he was currently leasing to for growing hemp.

28. The lease agreements were both dated 03/18/2022 and appear to be signed by "Phil Janzen Land Lord" and an illegible signature appears for the "Tenant". Per the lease agreements, JANZEN charged "A1 Conifers" (Victor Ovchinnikov) $30,000 for six acres at the Willow Lane Property and an additional $50,000 for eight acres at the Webfoot Property, for a total of $80,000 for 14 acres per growing season. An analysis of these lease agreements shows that Victor was paying a total of $80,000 for 14 acres, which is an average of $5,714 per acre and not the $1,000 per acre claimed by JANZEN. This discrepancy is approximately 5 times that which he told investigators before they found the leases in the lessee camp at the Willow Lane Property.

29. Investigators continued the interview with JANZEN and specifically asked JANZEN if the money Victor paid him for the land would be in the residence. JANZEN said yes and when investigators asked him, he said the money would be in his room and more specifically in his closet. Investigators asked JANZEN how much money we would find in his room. JANZEN said he did not know. Investigators asked JANZEN why he had cash in his house that he didn't put in the bank. JANZEN said he had a car business and other businesses and did not elaborate. Investigators further explained that they believed he had legitimate businesses, but it did not

explain why he would have cash on hand. Investigators asked JANZEN what happens when someone pays him cash for his car business, and he said he puts it in the bank. Investigators asked a second time with that in mind why he would have cash in the house. JANZEN said he put it in the bank.

30. Investigators then paraphrased for JANZEN and told him the only cash that should be in the house is from the marijuana money from 2021 and 2022 and he said "yes". Investigators then clarified there should only be about $15,000, and he said "yes". Investigators ended the recording and shortly after, JANZEN said he did not want to speak with investigators anymore and wanted an attorney.

31. While searching the residence, investigators located inside the closet (Room C) a black Under Armour shoe box which contained cash and a receipt from Cherry City Metals for $4,367.50. Per the money in the box, it appeared JANZEN had been retrieving money from the box as there was less than $500.00 in it. These funds were not seized by investigators.

32. In the clothes hamper within the master bedroom closet however, buried underneath several layers of clothing, investigators located a "Boss" cologne bag. Inside the bag there were large stacks of cash in different denominations totaling $62,635. Underneath the Boss bag were three (3) additional bags and storage items which contained cash in the amounts of $41,999, $46,612, and $4,288. In total, there was $155,534 in cash hidden in the laundry hamper in the closet of the master bedroom, under a pile of clothing, with no receipts or documentation showing the source of the funds.

33. Investigators also located an additional stack of cash in the master bathroom that totaled approximately $2,313 and two additional stacks of cash within JANZEN's brief case in the kitchen, one for $6,028 and one for $825. In total, investigators seized $164,700 from JANZEN's

residence that could not be tied to any receipts or documentation showing the source of the funds.

34. Investigators also located several firearms of different caliber inside the closet. In total there were 14 long rifles, 13 inside the closet (rifles and shotguns), one underneath the bed, and one pistol concealed inside a duffle bag next to the bed. All firearms were seized and later entered into evidence. In addition, at the time of the arrest of the eleven workers that had been assisting with the illegal marijuana grow, officers seized an additional $9,640.12 in US Currency.

35. Investigators located several receipts from Chase Bank related to large cash deposits within JANZEN's office. Digital images of receipts and other documents were taken and later entered into evidence. Investigators also located a document labeled "Janzen Farms LLC Profit & Loss" from January 2021-December 2021. While reviewing the Profit and Loss document, investigators did not observe any cash income documented for any cash received for leasing his land to the growers who had put up the greenhouses in 2021. The Profit and Loss also documented JANZEN making $412,446 in his Auto Business. In total, JANZEN's gross profit for 2021 as documented on "Janzen Farms LLC Profit and Loss" was $1,851,483.20. The net income for 2021 was reported on the document as $791,743.00.

36. Investigators also located several other documents from JANZEN's office which linked JANZEN to the illegal grow, as follows; Hemp Insect Factsheets, Oregon hemp industry poised for big growth after feds sign off, Accredited Cannabis Testing Laboratories, Industrial Hemp Sampling and Testing Request Form, Medical Marijuana (Marijuana Testing Requirements), 2019 Industrial Hemp Grower/Seed Registration Application, and a copy of the Oregon Revised Statutes Chapter 71 which has information on "Hemp".

37. At approximately 1600 hours, JANZEN informed a Deputy he wanted to speak with an investigator. Investigators again began recording the interview and confirmed with

JANZEN that he was willing to speak without a lawyer or attorney present. Investigators asked JANZEN if he knew how much cash he had in the house. JANZEN said he had car money; farm money and recycling money but he didn't know how much he had on hand. Investigators asked JANZEN why he didn't deposit the money in the bank. JANZEN then said he doesn't take it all to then bank. Investigators asked him why and further explained if all the cash in the house was legitimate, the bank would have no problem depositing it. JANZEN said he just hadn't got it done. Investigators explained we located nearly $160,000 in cash and no reasonable person keeps that much money in their residence in a laundry hamper. JANZEN said it was money he got from when he and his dad had taken recycled items and from his car business. Investigators told JANZEN they had located several receipts for his car business as well as recycling items, but they did not find any receipts for the $160,000 cash.

38. JANZEN continued to say he was leasing the land to Victor so he could put up greenhouses. Investigators reminded JANZEN multiple times he previously told them he rented to Victor for "CBD Oil purposes". JANZEN continued to tell investigators Victor worked with his father on nursery businesses in the past growing trees and whatnot. Investigators asked JANZEN if his father ever allowed Victor to grow cannabis at the farm and he said no. When JANZEN was asked why, he said they just never did before, and they were normal farmers.

39. Investigators informed JANZEN he was going to be arrested for Unlawful Manufacture of Marijuana Item and Unlawful Possession of a Marijuana Item. During the execution of the warrant at the Webfoot Property address where JANZEN resided, investigators counted approximately 4,510 illegal Marijuana plants and 10,440 Lbs. of drying Marijuana. In addition, investigators counted 53 greenhouses and approximately 15,427 additional illegal Marijuana plants at the Willow Lane Property. Investigators seized the sum of $174,340.12 broken

down as follows:

| AMOUNT | LOCATION |
|---:|---|
| $155,534.00 | Cash hidden in laundry hamper |
| $2,313.00 | Master bathroom |
| $6,028.00 | Kitchen |
| $825.00 | Kitchen |
| $9,640.12 | On the persons at the properties |
| $174,340.12 | TOTAL AMOUNT SEIZED |

## CONCLUSION

40. Considering the aforementioned facts and observations, investigators believe **Defendant Currency** was obtained through the illegal sale and manufacture of marijuana. Moreover, I believe **Defendant Currency** is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as proceeds furnished or intended to be furnished by any person in exchange for a controlled substance or proceeds traceable to such an exchange in violation of 21 U.S.C. § 841.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 25th day of March 2024

                                                                                                            _s/ *Kenneth Bain*_____
                                                                                                            KENNETH BAIN
                                                                                                             Special Agent
                                                                                                             Drug Enforcement Administration